UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES FIFTH, STEVEN PENNINGTON And DEBORAH PENNINGTON, | : : : : | Civil Action No. 11-7440 (NLH – JS) |
| Plaintiffs, | : : |  |
| v. | : : | **OPINION** |
| STATE FARM INSURANCE CO., | : : |  |
| Defendant. | : : |  |

**APPEARANCES**:

TIMOTHY J. MCILWAIN
TIMOTHY J. MCILWAIN, ATTORNEY AT LAW, LLC
89 RIVER STREET #1538
HOBOKEN, NJ 07030
*Attorney for Plaintiffs*

CRAIG D. GOTTILLA
DAVID F. SWERDLOW
WINDELS MARX LANE & MITTENDORF
120 ALBANY STREET PLAZA
6TH FLOOR
NEW BRUNSWICK, NJ 08901
*Attorneys for Defendant*

**HILLMAN, District Judge**

Plaintiffs[1], Steven and Deborah Pennington, filed a complaint against defendant State Farm Fire and Casualty Company (improperly named as State Farm Insurance Companies) ("State

---

[1] Plaintiff James Fifth was voluntarily dismissed on February 28, 2013.

Farm") following State Farm's denial of their insurance claim for damage to their home due to a water leak and mold.  Before the Court is State Farm's motion for summary judgment.  For the reasons expressed below, State Farm's motion is granted.

I. **JURISDICTION**

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between plaintiffs and defendant.  Plaintiffs are citizens of the State of New Jersey.  State Farm is incorporated in the State of Illinois with its principal place of business in Bloomington, Illinois.  The amount in controversy is alleged to exceed $75,000.00.

II. **BACKGROUND**

According to plaintiffs,[2] plaintiff Deborah Pennington owns

---

2 Pursuant to Local Rule 56.1, defendants submitted a statement of material facts in support of their motion for summary judgment.  Since defendant is moving for summary judgment, all plaintiffs' evidence "is to be believed and all justifiable inferences are to be drawn in [their] favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  Here, however, in response to defendant's statement of material facts, plaintiffs failed to submit a "responsive statement of material facts, addressing each paragraph of movant's statement, indicating agreement or disagreement, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[]" as required by Local

a house located at 1008 Batts Lane, Cape May, New Jersey, and plaintiffs Steven and Deborah Pennington, husband and wife, purchased a homeowner's policy from State Farm.  In early September 2010, Mrs. Pennington noticed a "fleeting odor" (a few seconds) in the kitchen by an open window near a field.  Mrs. Pennington told her husband about the "funny smell," but he "blew it off."  In late September 2010, Mrs. Pennington noticed that the wooden threshold connecting the kitchen and dining room floors had "popped up and buckled."  When Mrs. Pennington pointed out the damaged threshold to her husband in late September 2010, he agreed that "something's wrong" and that they needed to call a plumber.  Plaintiffs called Joseph Griesbach from Plumber Joe's Plumbing who went to plaintiffs' house on October 12, 2010.  When Mr. Griesbach went into the crawlspace underneath the kitchen, he discovered "steam or vapor spraying out of a small rot hole in the copper ice maker supply line."  He also found "an enormous

---

Rule 56.1.  Rather, plaintiffs submitted a "counter-statement of facts" which does not directly address defendant's statement of facts.  As a result, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." See L.R. 56.1.  The Court will, however, treat plaintiffs' "counter-statement of facts" as their "supplemental statement of disputed material facts" and has sorted through the submission on its own.  See L.R. 56.1. Counsel is reminded, however, that strict compliance with Local Rule 56.1 helps the Court and the parties insure the proper application of summary judgment standards.

amount of water damage and a lot of mold growth throughout the crawlspace." Mr. Griesbach located the shut-off valve and turned off the water.

On October 12, 2010, plaintiffs submitted a claim under their homeowner's insurance policy with State Farm. State Farm claim representative Mia Donnell inspected plaintiffs' house on October 14, 2010 and observed mold in both the crawlspace and the kitchen. State Farm hired an environmental consulting company, MDG Environmental, LLC ("MDG"), to investigate and determine the cause of the damage to plaintiffs' house. Christopher Macri (Senior Industrial Hygienist from MDG) inspected the house on October 16, 2010. In plaintiffs' kitchen, Macri found more than "200 square feet of visible mold growth." Macri observed that the vinyl floor tiles in the kitchen were coming loose, the subfloor beneath the vinyl tiles "was wet up to 94% on a wood moisture equivalency scale," and there was a "strong musty odor" when tiles were lifted. Macri took moisture measurements from the sheetrock wall behind the
refrigerator and found the wall "was wet up to 90% on a wood moisture equivalency scale." Macri also observed that the sheetrock wall behind the refrigerator "was crushable with hand pressure in some areas, up to 48 inches above the floor."

Macri also collected air samples in the kitchen, which

4

showed elevated airborne fungal concentrations nearly three times higher than the baseline level.  In the crawlspace, Macri found "extensive visible mold growth" on the wooden joists and decking (i.e., the subfloor to the kitchen).

At the time of Macri's inspection, the small hole in the copper supply line to the icemaker had not yet been repaired.  Macri states that "[u]pon examination of the path and spray pattern of the water it revealed that it correlates to the area beneath the kitchen with those areas being exposed to water and steam, resulting in the water damage and mold growth."  Macri "concluded that the extensive mold growth that was observed in the crawlspace and kitchen was created by excessive moisture in the crawlspace resulting from a long term leak from the ice maker supply line in the crawlspace."  Macri "further concluded that the leak was on-going for a long period of time to support the continued fungal amplification (mold growth) over an extended area in the crawlspace and to penetrate/migrate up through the floor decking into the kitchen."

Plaintiffs assert that Macri conveyed to them that the combination of the hot spray from the leak and the time of year created conditions that could contribute to rapid mold growth.  Plaintiffs also assert that Macri assured Mrs. Pennington that it was not her fault and that a layman would not have noticed it.

By letter dated October 26, 2010, State Farm denied plaintiffs' claim.  A copy of the denial letter was faxed to Mrs. Pennington on October 27, 2010.  Plaintiffs filed a complaint against State Farm in the Superior Court of New Jersey on October 26, 2011, which case was removed to this Court.  State Farm now moves for summary judgment.  For the reasons expressed below, State Farm's motion will be granted.

### III. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving

party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading [s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).  For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57.

**IV.   DISCUSSION**

Under New Jersey law, insurance "policies should be construed liberally in [the insured's] favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 582 A.2d 1257, 1260 (N.J. 1990) (citations omitted).  "Notwithstanding that premise, the words of an

8

insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Id. (citations omitted).  "Insurance coverage is a matter of contract law determined by the language of insurance agreements." Ayala v. Assured Lending Corp., 804 F.Supp.2d 273, 280 (D.N.J. 2011) (citing Longobardi, 582 A.2d at 1260).

When the policy's language is clear and unambiguous, the court is bound to enforce it according to its plain and ordinary meaning.  Stafford v. Scottsdale Ins. Co., 416 F. App'x 191, 194 (3d Cir. 2010) (citing Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255, 1260 (N.J. 1992)).  However, if there is any ambiguity with regard to any wording in the policy, the language should be "construed liberally in the insured's favor." Ayala, 804 F.Supp.2d at 281 (citing Longobardi, 582 A.2d at 1260); see also Zurich Am. Ins. Co. v. Keating Bldg. Corp., 513 F.Supp.2d 55, 64 (D.N.J. 2007).  "A provision of an insurance policy is ambiguous if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning."  Vlastos v. Sumitoma Marine Fire Ins. Co., 707 F.2d 775, 778 (3d Cir. 1983).  Moreover, when analyzing an insurance policy, the court must view it from the perspective of an average policyholder.  Zurich, 513 F.Supp.2d at 69; Cont'l

9

Cas. Co. v. Gamble, No. 05-5189, 2007 WL 1657107, at *4 (D.N.J. June 5, 2007) (citing Morrison v. Am. Int'l Ins. Co. of Am., 887 A.2d 166, 169 (N.J.Super.A.D. 2005) (internal citations omitted)).

State Farm has presented evidence that plaintiff admitted that she smelled something funny in late August or early September 2010, but it is not clear that she smelled mold. She states that the window was open and that she thought the smell was due to rainy weather. State Farm also presents evidence that the wooden threshold connecting the kitchen and dining room floors had popped and buckled as of late September 2010, prompting plaintiffs to call a plumber who inspected the crawlspace on October 12, 2010. There is no dispute that plaintiffs were aware of the leak and mold on October 12, 2010, and that they called State Farm on the same day to report their claim.

It is also undisputed that upon inspection of the crawlspace, more than "200 square feet of visible mold growth" was observed. Also, the vinyl floor tiles in the kitchen were coming loose, the floor beneath the vinyl tiles "was wet up to 94% on a wood moisture equivalency scale," and there was a "strong musty odor" when tiles were lifted. The sheetrock wall behind the refrigerator "was wet up to 90% on a wood moisture

equivalency scale" and "was crushable with hand pressure in some areas, up to 48 inches above the floor."  According to the expert report submitted by State Farm, the water damage was the result of a small leak which sprayed water and steam in the crawlspace, and the damage caused by this leak occurred over an extended period of time, at least one month.

State Farm argues that plaintiffs' policy excludes coverage for losses caused by "continuous or repeated seepage or leakage of water or steam from a ... plumbing system ... which occurs over a period of time."  Plaintiffs argue that the term "a period of time" is ambiguous and undefined by the policy.

New Jersey courts have found that the failure to define a term in an insurance contract can render the term ambiguous. Property Cas. Co. of MCA v. Conway, 147 N.J. 322, 687 A.2d 729 (N.J. 1997) (finding that the failure to define "accident," created an ambiguity into the definition of "occurrence" so that in defining "accident" and "occurrence" the court construed any ambiguity against the insurer and in favor of the insured); Azze v. Hanover Ins. Co., 765 A.2d 1093, 1102 (N.J.Super.A.D. 2001) ("The failure to define a term in a policy of insurance has been construed to render it ambiguous.") cert. denied 168 N.J. 292, 773 A.2d 1155 (N.J. 2001).  On the other hand, New Jersey courts have also found undefined terms to be unambiguous.  See

11

Hucklebridge v. Government Employees Ins. Co., 2011 WL 10054, at *3 (N.J.Super.A.D. 2010) (declining to find exclusion ambiguous because insurer failed to define "motor vehicle").  In Priest v. Roncone, 851 A.2d 751, 755 (N.J.Super.A.D. 2004), the court stated "[a] word or phrase is not automatically rendered ambiguous simply because the policy fails to define it[,]" and instructed that where a "policy fails to define a term or phrase, 'the words must be interpreted in accordance with their ordinary, plain and usual meaning.'"  Id. at 755.  Likewise, in J.C. ex rel. M.C. v. N.B., 762 A.2d 1062, 1063 (N.J.Super.A.D. 2000), the court noted that although "the failure to define 'accident' may render a coverage provision ambiguous in some circumstances," there was no ambiguity in the context of that case.  Thus, under New Jersey law, when an insurance policy fails to define a term, the term is not per se ambiguous, and can be viewed in the context of the overall case and given its ordinary, plain and usual meaning.

Here, the phrase "over a period of time" is undefined.  The plain meaning of "period" is "a length of time during which a series of events or an action takes place or is completed.,"[3] The plain meaning of "time" is "the thing that is measured as

---

3 http://www.merriam-webster.com/dictionary/period.

seconds, minutes, hours, days, years, etc."[4]

Based on the definition of these words, a time period of one month would fit the description. Moreover, in the context of this case, uncontroverted evidence showing that the leak occurred over at least one month would support a finding that, applying the ordinary, plain and usual meaning of the phrase and its terms, the seepage occurred "over a period of time."

The only evidence submitted by plaintiffs regarding the length of time of the leak is a certification of plaintiff Deborah Pennington who states that Christopher Macri, State Farm's expert, told her during his inspection that the combination of the spray from the leakage being hot in temperature and the time of year would contribute to rapid mold growth.[5] This however, does not contradict Macri's conclusion that the extent of the water damage and mold growth demonstrated the leak occurred over a period of time. Even if various factors contributed to rapid mold growth, there was 200 square feet of

---

4 http://www.merriam-webster.com/dictionary/time.

5 This is out-of-court statement is likely not hearsay as it appears to be a statement by a party's agent made during the scope of the agency. An out-of-court statement can be considered on summary judgment if it can be presented in a form that is admissible at trial. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1235 n. 9 (3d Cir. 1993).

visible mold growth at the time of Macri's inspection caused by a small leak in single water line.  There is no evidence that it sprung over night or resulted from some sudden accident or catastrophic event.

    Plaintiffs also submit the expert report of James E. Fifth who states that because the leak was concealed, it cannot be determined when it began in order to calculate the time period. Fifth's report does not contradict State Farm's evidence since State Farm does not provide a certain date when the leak started, only that given the damage, it must have occurred for at least one month.  Plaintiffs have presented no evidence contradicting State Farm's expert that the leak occurred over one month.  Thus, regardless of the start date of the leak, it had to have occurred for a while given the source of the leak and amount of damage. Furthermore, in late September, the wooden threshold connecting the kitchen and dining room floors had popped and buckled indicating a water problem which prompted plaintiffs to call a plumber.  Based on those facts, the leak had to have been ongoing well before October 12, 2010.

    Therefore, State Farm has provided evidence that the leak occurred "over a period of time."[6]  There is no dispute that

---

6 In the context of this case where the damage was extensive from a small leak that was on-going, the term "over a period of time"

extensive water damage and mold existed, and State Farm provided expert testimony that the damage was caused by a small leak that was on-going over a period of time.  Since a fair reading of the language of the policy would preclude a claim for coverage based on the uncontested facts of this case, Defendant is entitled to judgment as a matter of law.[7]  To hold otherwise, even if the result would seem more equitable, would be to rewrite the contract and strike a different bargain than that reached by the parties at the time they bound themselves to contract.

## V.   CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment is granted.  An Order consistent with this Opinion shall be entered.


At Camden, New Jersey                    s/Noel L. Hillman
                                         NOEL L. HILLMAN, U.S.D.J.

Dated:   March 25, 2014

---

is not ambiguous.  However, it is possible that under a different set of facts, the term could be ambiguous.
[7] In light of our determination that the policy does not cover the loss sustained by the Plaintiffs, we need not address defendant's alternative claims that it did not act in bad faith, the plaintiffs' claims for benefits under an insurance contract are not covered by the Consumer Fraud Act, that quasi-contract claims are subsumed by the written agreement, and that Plaintiffs' action is barred by the statute of limitations.